Good morning, your honors. Jared McClain for the appellants. I'm gonna try to reserve three minutes if I can. Okay, and I think you've heard my speech about watching the clock. Thank you. The Thomases bought their property with free and clear title and just six days later they were subject to $12,000 in daily penalties because someone else had cannabis in their garage two years before they even bought the place. Now the county knew that the cannabis was fines. The Thomases would soon learn that they were part of an extremely convoluted system that punishes innocent people by design. The due process problems here start as soon as the county sends these notices of violation. They don't describe what condition on the property is supposedly in violation of the code and they don't tell you when the 10-day clock starts to run. The mail, it posts them at the edge of the property. By the time someone gets it, they don't know how much time they have left to correct the violations and they don't know what they have to do to correct the violations. And the problems I think start even before that because this dragnet enforcement scheme starts with the county looking down from satellite images to find supposed grading violations or unpermitted buildings and then just assuming that they must contain cannabis. And this allegation of cannabis brings immediate and unavoidable consequences for the people who receive them. The fines begin to run automatically as a matter of law after 10 days and the only way to stop them is by appealing. And while you wait for your appeal, you're not allowed to develop your property. You're not entitled to the permits you need to correct the supposed violations and you're also not entitled to any other property. And this wait is, I'm sorry Your Honor, go ahead. Sure, no, I think that I'm just trying to, the district court, I think we read all the complaint and the briefing. The district court seemed hung up on the fact that the initial notices, at least for some of the plaintiffs, didn't specifically name them or were issued technically against the prior owner. My understanding, at least from the allegations of the complaint, is that there sort of never any question that the county was still holding the current owners liable. Can you point to anything there specifically? I think we're, I understand we're on a motion to dismiss so there's not record evidence, but do you have allegations in the complaint that say like, that would show that the county was expecting the named plaintiffs to be liable for these notices even though they didn't specifically name them? Do you understand my question? Yeah, I completely understand. Yes, Your Honor. I have two responses to that. One at paragraphs 123 to 134 of our complaint, we talk about how it's the county's policy that the current owner is responsible for all the conditions on the land. There was actually a public hearing with respect to our specific clients and in response to a news article about how the government was punishing innocent purchasers and Director John Ford, who's offended in this case, sat there at the public meeting and said he lamented the sympathy that they were getting because they are responsible for all of the conditions on their property. So as we have alleged that they are responsible and beyond that I think the question's a bit beside the point because Rhonda Olson's fines were issued in her name in April 2020 and under this court's decision in Bates, which was en banc, as long as there's one named plaintiff in a into all the other plaintiffs, I would assert that all of our plaintiffs have standing here, but because Rhonda Olson and the Thomases both clearly do, then I think that resolves the question. So the district court or the magistrate judge that had this case wrote an extensive order. So I know I've read your brief, but where do you think is the most serious error in dismissing your claims without leave to amend? I think as a general matter the error that pervaded everything was his refusal to accept our allegations as true and he looks at all these documents, he looks at 600 pages of documents without identifying a single fact that's not subject to a reasonable, that's not subject to differing interpretations, that actually contradicted anything in our complaint and then he just ruled as a matter of law that everything the county had done was even-handed and proportionate and non-arbitrary and the standard for our excessive fines claims and our substantive due process claims are proportionality and arbitrariness. So he assumed all of the facts against us and then he reached legal conclusions and basically said we're never going to be able to prove these claims. There's nothing that we can put forward that's going to change his mind that what the county did here was disproportionate or arbitrary. How about the timeliness arguments that were asserted in the district, in the order? Yeah, as I was touching on in there was both a factual error, Rhonda Olson received her notice of violation the operative NOV for her property in April of 2022 and we alleged that in our complaint paragraph 436 and so that claim was very clearly within the two years statutory period as the trial court acknowledged the Thomas's notice of violation also came within the two-year statutory period and so I think that certainly the harm that Blue Graham and Ciro Glead continue to face is ongoing because every day that that they still are waiting for their hearing they're still Ciro's still prohibited from developing his property so I think that each day that that happens is a new violation but I don't think this court needs to resolve that because under Bates we have Rhonda and we have the cases and just going on like expanding on your question some other ways that the court erred that affected things he refused to accept that our clients had applied for permits that we we weren't even allowed to allege that the county has this policy and practice of denying permits and we alleged at paragraphs 362 377 390 and 442 that Blue Graham sought the grading permit that he needed to resolve his abatement case he saw a safe home permit he paid the fee for his safe home permit and then code enforcement told him that there was a hold placed on his permit because he had an outstanding cannabis abatement case and then also Rhonda Olson emailed the county and said I just had an engineer come out I'd like to have a septic system installed on my property and the county responded FYI you are ineligible for permits while you wait for your abatement case there's a very clear harm these are ripe allegations under Harris versus Riverside from this this court our clients have been wholly precluded from developing their property while these cases drag out and these cases just drag out indefinitely because as we alleged unless they have hard proof that somebody actually grew cannabis without a permit they just never give them a trial the only people that are actually getting administrative hearings are the people who are guilty and everyone else is stuck in limbo indefinitely until they eventually give in and pay a settlement can you address the judicial notice issue a little more the district court indicates in the order that the plaintiffs opposition to the motion for judicial notice was thin so I understand you have an argument that even if the judicial notice was proper you know it at best created material factual disputes that at this stage of the proceeding should not have been resolved in favor of the defendants but can you address the merits of the granting of the judicial notice in the first place in light of the nature of the opposition yeah so our position below was that these are 600 pages of hand-selected documents this is a motion to dismiss they can attach them when we get to summary judgment and we were overruled on that objection we haven't we haven't brought it up on appeal our position here is that even if these documents themselves were susceptible to judicial notice there's the trial judge still has a duty to specifically identify facts within those documents not just the documents themselves and he needs to the need to clearly contradict the allegations in our complaint and he didn't specify anything and to this day we're still not sure what is in those documents like we hit this was it we're up here on an amended complaint they got dismissed we filed our original complaint they attached all the documents for their original motion to dismiss we looked through them we said there's a lot of good stuff in here for us this system is working in a way that's even crazier than we imagined we added a hundred and thirty two new looked at those same documents and said that that we were highly disingenuous to suggest that the system is working the way that it does and that was error and in as this court explained it in right Gilead by doing that by by sitting as a finder of fact as at the motion to dismiss stage based on judicially noticeable documents it makes it impossible for plaintiffs like us to prove our case and as this court as this court said in koja after it goes after you go through this analysis of whether or not a fact is subject to judicial notice you still go back to rule 8 you still go back to the pleading standard and whether under Twombly and Iqbal what we said was what we said are well pleaded allegations were they plausible and what the trial court here he looked at our he didn't look at whether our legal claims were plausible he looked at whether our facts were plausible and he said it's just implausible to me that the at a motion to dismiss stage assuming hypothetically we agree with you that there was reversible error you're also asking for reassignment on remand can you address that argument yes your honor um sorry bear with me one moment so I think that the the Yvonne decision from this court is the most on point for why reassignment is appropriate the the trial court already drew factual conclusions like he was like this was an evidentiary stage he held that our facts were implausible highly disingenuous not entitled to the presumption of truth he accused us of being disagreeable of obfuscating of painting a distortion picture distorted picture of making gross mischaracterizations on the merits he said we won't ever be able to state a claim that the county imposed an unconstitutional condition and he ruled as a matter of law that everything they did was even-handed proportionate and non-arbitrary which makes it impossible for us to state a claim under the due process clause or under the Eighth Amendment so I think that he has made very clear I think this this court has said when a trial judge is adamant in its decision and it makes it seem like the judge is not going to change his mind that reassignment is appropriate but this court has also said in Reyes versus Rivera that even if you believe that he might be able to put aside his past belief you should also look to the appearance of injustice and if we go back down and and we get kicked on a motion to dismiss for all these same reasons it's not going to look like justice and the hundreds of putative class members and humble who have been subject to this system for over five years are going to have to wait a couple more years for relief as we're back up here in the Ninth Circuit raising all these same arguments. Why isn't that true whenever we reverse case for dismissing improperly? Well I think that that goes back to the first prong of the Sears Roebuck test which is has this judge made clear on the record has he said something that suggests that his views are firmly held and he's not going to be pulled off of them and I think that the long list of adjectives and ridicule make that clear in this case. And I have about two minutes left so I'd like to reserve that if I may. Yeah. Good morning. May it please the court. Pamela Graham on behalf of the county of Humboldt. I think what your honors just heard is precisely why this case should be affirmed. There are rare circumstances where when a case comes up on a complaint, it is appropriate for a judge when reviewing the complaint to go beyond the complaint as this judge did here and to dismiss it without leave to amend. This is that circumstance. It was a lengthy complaint. It raised numerous parties, numerous allegations that the county then had to defend but it was mischaracterizing the nature of those code enforcement proceedings and a court is entitled when reviewing a complaint before it requires here a public entity to put in taxpayers dollars to defend the case to look beyond the complaint. I'm not aware of any law or anything that suggests that the county should get some special consideration. And I'm not asking for special consideration. I mean it looks to me like what the judge did here was you, you know, the standard is you take the facts and the light most favorable to the non-moving party. Here it would be the plaintiffs and you and where there's discrepancies, you know, you look at everything in light most favorable to the plaintiff. It doesn't look to me that that's what he actually either took notice of or incorporated. I don't know what he took notice of. He took notice of all those documents. Well, he took notice of public documents so that included county code sections. It included some other cases that we asked the court to notice. But there were also then all of the documents which was the majority of documents that were code enforcement proceeding documents. So that included, and your honors have seen the what's in there, but just to summarize, the notices of violation, the actual notices to evade, communications that were going back and forth between the named plaintiffs and the county. So depending upon the plaintiff that may have varied. It may have been emails. It might have been an engineering report. We're talking a very high level here, which is only a limited use. But for example, you can see the plaintiff specifically alleged, you know, this person from the county told me they weren't going to approve my permit application because I have this outstanding violation or something to that effect. That seems to me to meet our requirements for specificity. Then we have the district court essentially making a finding that that couldn't have happened or didn't happen without pointing to something specific in the judicially noticed documents that could essentially negate that allegation, that could make it that was said to one of the named plaintiffs. Are you saying there is something in those documents that disproves that allegation, that flatly contradicts it so that it's not something that the court was required to deem true? Let me give a few examples. So one I would note is anything that deals with the procedural issues of whether there is a fair process. If you look to the county code, which was taken notice of, and if you look to the notices of most of the information that has been taken issue with. So for example, when are you required to get a hearing? Well, it will say in the county code section, which the court took judicial notice of, as well as in the actual notices of violation that were issued, that you are entitled to a hearing if you timely appeal no sooner than 15 days after that notice is issued. No sooner, not no later. That's correct. So no sooner. And there is no specific deadline within the code when they actually have to give that hearing. The reason that the judge then looked even beyond those core documents to the communications back and forth is because if you're going to raise an issue of delay, then it is appropriate to look at whether or not that delay was being caused by the county, or was it being caused by these specific plaintiffs? And when the court took notice, or in court... And what you're answering my question though, as specifically about the allegation of the county has a policy, or that at least the representation was made by someone from the county to name plaintiffs that they would not approve, the county would not approve their permit applications unless they resolve the pending notices of violations. So, and the district court seemed to just say that's not... We're not... Basically the county does not... I'm gonna find the county does not have such a policy. So is there... But it seems to me that then there would be somehow those judicially noticed documents would have to make it impossible for that to have been said. But I don't even see how that's possible. If there was a communication, a representation, and that there was that communication, how can the judicially noticed documents resolve that factual allegation so conclusively that it's not entitled to be deemed true on a motion to dismiss? So I would say there are two responses to that. One is specific to a plaintiff. So just to give an example, if we're talking about, for example, plaintiff Olson, it's important to note that she, in fact, reached out to the county, talked to them about curing some of these violations, abating them, and then asked for there to be a remediation plan for the properties. So that is all in the document. So the document is 3 ER 451. It goes all the way to 548. And it shows that there were these constant communications with the county, that the county agreed on a plan to actually abate these issues. The second response I would have to that is that one of the judicially noticed documents was, in fact, a plan or a policy that the county put into place, which was policy 2204, and that's at 2 ER 243. And that shows that, in fact, it was not the policy of the county to just automatically deny any permit that was sought relating to the property. They could, in fact, keep that if they went through the appropriate steps. Right, but plaintiffs are saying someone told me otherwise. So why isn't that just a material factual dispute that has to be resolved in favor of the plaintiffs on a motion to dismiss? Well, I think the argument there is that that doesn't make out any of their claims, and it certainly doesn't get them past the procedural hurdles. Something that the district court, a factual allegation that seems specific, that the district court didn't credit to be true on a motion to dismiss. Again, I would say that the facts that are actually in the documents do not show that. And if I can go back to, Your Honor, the point about whether these claims are even procedurally appropriate. Any of the documents, any of those allegations that you're referencing right now, still don't make these claims ripe. They still don't make them timely. So I think to the extent that the court is looking to those documents, also weighing the allegations in favor of the plaintiffs, he still appropriately found that the claims were not ripe. And the reason for that is because there was nothing in either the allegations or in the documents that he took notice of that, in fact, any of these plaintiffs actually sought through permit applications, these permits, and that they were rejected. When it deals with the excessive fines issues, there were none of the plaintiffs that were actually imposed fines. The claim isn't that they were entitled to the permits. Their claim is that the coercion brought upon them by saying that we're not going to prove these unless you do this, is the claim. And their claim is that we're suffering actual, I mean, we even have case law saying you can have standing, you can have concrete injury before a violation is being prosecuted against you if you can show that it's likely to occur. So why aren't these claims ripe? Why don't they have sufficient injury under that line of case? Sure. So the reason that they are not ripe, first of all, because they didn't seek a permit. I understand your point that there are cases where you may have a harm that precedes that. But let's remember what's going on with each of the four properties at issue here. All of them have evidence that there was previous unlicensed cannabis cultivation on these properties. There were unpermitted buildings, and I'm using generalities, obviously, across all four of them. There are specific allegations as to each of them. There was debris that related to that prior cannabis cultivation. And they're being no treated any differently than any other party that comes to the county who has violations on their property. Were they served with a notice of violation? I'm sorry, Your Honor? Were they served with a notice of violation? So there were notices of violation at issue here. They were served to the named plaintiffs in three of the cases. In one of the cases, the Thomases, it was not served on the Thomases, but rather on the prior owner of that property. For that reason, the Thomases, I would argue, do not have standing to bring a claim. And did the notice of violation impose a penalty? The notices of violation include a proposed penalty. That penalty is subject to discretion, which means that there are factors that are listed in the Humboldt County Code that may bring that amount down. Is that in the notice of violation? Well, it references to the county code. So if you go to the county code, you would see the factors that are listed, yes. And it also says on the very top of that, that it is a notice of violation and proposed penalty. And as Your Honors know from reading the briefs, in most of these cases, including Plaintiff Graham's case, the penalties are either written off, so to say, if the case is settled. In Mr. Graham's case, he only paid about $500 for an actual permit fee. None of the other fines were imposed on him. Or, of course, there's always the alternative that if this is a case that goes up through the administrative process and is then reviewed by a superior court or by the hearing officer initially, those fines may be reviewed and reduced. Does the hearing officer have authority to reduce them down to zero? He does have authority. He or she does have authority to reduce them down to zero. Take them all the way down to zero? And, of course, that would be, I think, in a circumstance where that hearing officer may not find that the violations withstand review. But, yes, they may be reduced down to zero, as they were in Mr. Graham's case when he did settle his case. But he had to engage in various admissions, agree to take certain actions to get that settlement, correct? Well, but the only actions that he was required to take are actions, for example, in his circumstance to grade property that was not graded. And this is not some type of enhancement that the plaintiffs take issue with because of a prior cannabis cultivation. This is simply a land use and a code enforcement issue that would have to be corrected on anybody's property. Right. But the proposed penalties were based on the nexus with cannabis cultivation, correct? That is true. That is true. And then the, I want to go back to something you said about the Thomases. You're saying the notice wasn't issued in their name. My understanding, at least from the complaint allegations, the Thomases have been operating under the assumption that they are liable. Nonetheless, has the county ever affirmatively represented to the Thomases that they're not liable for those pre-existing violations? You seem to, the county seems to consistently taking the position that the current owners are liable for any existing violations, whether they were the cannabis growers or not. Right. So in the case of the Thomases, they actually reached out to the county, authorized an inspection of the property, and then there were communications back and forth. There was a proposed compliance agreement in terms of how they could actually fix those issues. They applied for a demolition permit. They never actually picked it up. So as you can see, Your Honor, they were trying to work with the county to fix the issues. So all of that presumes the county is not disabusing them of their understanding that they are liable for that notice, notwithstanding the fact that they weren't named. So there were discussions with the county that the county would agree to not actually serve the notice to abate and the notice of violation on the Thomases as the current owners if they proceeded through with the compliance agreement to actually fix the issues on the property. And there's also, my understanding is the complaint allegation is that the county doesn't record any of the violations, or at least in these cases, did not record any of the  property. Well, and in these cases, all of the notices of violation and notices to abate were actually served after these plaintiffs became the owners of the property. So there are not any notices to abate or notices of violation that would have preceded the recording of their grant deed. Even though you did seem to concede earlier that these are violations based on things that preexisted their ownership. That's true that the investigations began before the time that these particular named plaintiffs purchased these properties. Just one point I would make to that, though. I think there is argument, certainly in the briefs, that they are, the plaintiffs are somehow innocent purchasers. But as your honors know from reviewing the documents that we think were properly noticed or incorporated by reference, it was very clear that there was prior cannabis cultivation, unlicensed, on all of these properties, which would have been apparent to somebody that was buying the property. Not necessarily something that needed to be investigated and uncovered through a title search, but was, in fact, apparent when the properties were not inspected. Were there notices of violations recorded with the county recorder's office? Well, again, for these particular four of them, all of these plaintiffs were involved or owners of the property at the time that these notices were issued. So I can't speak to other notices of violation or notices to abate. But for these, they were actually the owners at the time they were issued. What's your position on reassignment if we agree with the appellants that it should be reversed and vacated? So I think, obviously, this judge took a lengthy pass through the documents that we requested notice of. I think that he showed through the opinion that he can base his opinions on the evidence. I don't see anything here that suggests that he would somehow be prejudiced to review evidence upon any type of a remand. We don't think it's appropriate to reassign. Particularly considering, in this case, because of the circumstances of where the plaintiffs are located, where the county is located, and where the judges are located in that district, we had actually agreed to have this case heard by a magistrate. Both sides agreed to that for all purposes. So we don't think this is a situation where there is such a clear prejudice or inability for him to be impartial that it could not be remanded back to the same judge. Thank you, counsel. Thank you, Your Honors. I'll try to briefly touch on—so there were many factual disputes that were raised during that argument, which shows why this should have got past the motion to dismiss. I'd focus on the fact that these penalties are final unless they're appealed. It says so in the notice of violation. We allege it at paragraphs 252 and 343 of our complaint. And you have to—the only way to have your fine reduced on appeal, there's a mandatory minimum fine of $6,000 per day. The only way to have that reduced is if you take immediate steps to work with the county to resolve your violation. So this idea that by Rhonda Olson working with the county to resolve her violation, she has waived the right to a speedy hearing, it's the only way that she could possibly have her fines reduced. So they put you in this situation where you have no choice but to work with them, but then by working with them, you're never entitled to a hearing. And that's how you end up with these circumstances where it's five, six years on, and these people have never gotten their first day in court. So another thing on whether these cases were started against the prior owner, if you look at some of the dates in the judicially noticed documents, they precede our client's ownership. These cases were started against the prior owner. They were never pursued against the prior owner. For the Thomases, for example, the case was two years old, and they waited until six days after they recorded title to issue the violations to the Thomases and to them, Rhonda Olson didn't agree to the settlement, and she had the violations reissued in her name. And it's not just the outstanding permitting violations. It's not just that there's nuisances on your property that are causing harm to society at large. It's that there was cannabis cultivated on this land, and you are facing cannabis penalties for the past conduct of the prior owner, and those were issued in Rhonda Olson's name because she refused to practice of nuisance abasement works, but crimes do not run with the land. And just because prior owners have committed illegal conduct on the land doesn't mean that years down the road a new purchaser should have investigated the garage to see if maybe there was a crime, because they could possibly conceive that they might be subject to over a million dollars in penalties and a $200,000 order to destroy a three-story garage in the middle of the property. The one point she did make, though, was that, you know, like these structures, there's photos of them in the record. A buyer who just walked through the property would be curious whether or not that structure was permitted, right? You'd think you'd want to check. So that's, and if this case were only about permits, our clients would have been able to get the permits. So there's an unpermitted structure on the property, and if it's able to be permitted, they would be able to then go through the process and get a permit for that, and they would be fully responsible for doing that, but because of the cannabis allegation, they're ineligible for that permit. So by alleging that there was cannabis involved, it takes them out of the normal permitting process, and they can't actually correct the nuisances on their property. Like if this were actually about permits, the county would let our clients get permits, and if you look at Blue Graham's Pond, the trial judge said it was a there-and-then permit. He applied for that permit in June of 2018 and completed his engineering report in January of 2019, and four more years passed and six more rounds of settlement and negotiations, and it was only when he finally agreed to pay a fine to settle the cannabis abatement case that they gave him the permit. They didn't come to the property. They didn't look at the pond. This isn't about public safety. He just needed to pay the settlement on his cannabis case until he could get back into the permitting process for all the other violations. Thank you, Your Honor. Thank you, counsel. Thank you for your helpful arguments today, and this matter is submitted for decision, and with that, I believe we are adjourned for the day. I'll stand in recess until tomorrow. Thank you.
judges: PAEZ, SUNG, Fitzwater